| 16 | 365 |
| 22 SC | 44 |

## McConnell versus Wenrich.

Where a husband assigned a bond given to him for his wife's interest in real estate, without receiving value therefor, but by an instrument under seal expressing the transfer to be *for value;* and the assignee during the coverture assigned the same to another *for value;* the second assignee, not having knowledge or the means of knowledge that the former assignment was without consideration, is entitled to the bond or its proceeds against the claim of the wife who brought suit after obtaining a divorce.

ERROR to the Common Pleas of *Berks county.*

This was an action of assumpsit, by Elizabeth McConnell, formerly Elizabeth Shaffer, daughter of John Shaffer, deceased, against John Wenrich, David Wenrich, and Daniel Wenrich.

The material facts in the case were stated in the charge of his Honor D. F. GORDON, President Judge, as follows:—

This is an action of assumpsit, brought to recover money which the plaintiff alleges to have been received by the defendants for her use, under the following circumstances:—The facts will be detailed to you by the court, as they appear to be substantiated by the evidence; but whether they are so or not, and of all matters of fact in the case, the jury are the exclusive judges. John Shaffer died in 1815, leaving a widow and four children, of whom the plaintiff in this action is one. In the same year, proceedings were had in the Orphans' Court of Berks county for the partition of the real estate of the decedent, under which proceedings 114 acres of land were adjudged to John Shaffer, son of the deceased, who entered into a recognizance in the Orphans' Court to secure the purparts of the other heirs. Elizabeth McConnell was at that time the wife of Frederick A. McConnell, and a bond was executed to *F. A. McConnell and his wife* to secure the payment of the wife's share. It would seem that this bond was for the sum payable to Elizabeth McConnell in one year, and also for the sum payable to her after the death of the widow of the decedent Catharine Shaffer. *For the latter sum* a new bond was given by John Shaffer *to F. A.*

2 F 2

[McConnell *v.* Wenrich.]

*McConnell alone*, dated December 14, 1818. The bond was for the sum of $1190.67, payable after the death of Catharine Shaffer, the widow of John Shaffer, deceased, that being the sum payable to Elizabeth McConnell as one of the heirs of the deceased.

On the 15th January 1819, Frederick A. McConnell, the husband of the plaintiff, assigned this bond to *Robert* McConnell and Daniel Vonneida. The assignment was under hand and seal, and made in the presence of two subscribing witnesses, and is expressed to be *for a valuable consideration*.

Daniel Vonneida, the assignee, who has been examined as a witness in the case, states that the assignment was not made for any stipulated sum, nor in payment and discharge of any debt due to him from the assignor, but he took it, as he says, as security for money due to him from F. A. McConnell, and also for his liabilities as surety of said McConnell, and that afterwards, within a year, as he thinks, from the time of the assignment, he paid for McConnell on account of those liabilities more money than the sum called for by the bond. Daniel Vonneida became the assignee of the whole sum mentioned in the bond; Robert McConnell having assigned to him legally on the 20th February 1819.

On the 15th February 1820, Daniel Vonneida assigned the bond legally to John Wenrich, the father of the defendants, *for a valuable consideration;* that is to say, in payment of his own debt to Wenrich as to a portion of the bond, and for money paid him by Wenrich for the excess beyond the debt.

In 1827, John Wenrich died, and letters testamentary were granted to the defendants in this suit. Catharine Shaffer died in 1831. To August term 1831, No. 58, an action of debt was instituted on the recognizance of John Shaffer, in the name of the commonwealth for the use of John Shaffer's heirs *vs.* John Shaffer, and judgment was entered for the plaintiff on the 19th January 1832, for the sum of $28,000. To April term 1835, No. 124, a sci. fa. was issued on this judgment for the use of John Wenrich's executors, the defendants in this suit. In 1841, a verdict was rendered in favor of the plaintiffs in that suit for $1881.23, and judgment taken *de terris*. Fi. fa. to August term 1841, No. 20, on which the 114 acres taken at appraisement by John Shaffer were levied on in the hands of Hannah Miller. After this levy was made, the amount of their judgment and interest was paid to William Strong, Esq., the counsel of the plaintiffs in that action, by Christian Seltzer, on an agreement that the judgment should be assigned to him; the sum thus received by the Wenrichs as executors of John Wenrich, deceased, forms the subject of controversy here. It is to recover that sum and the interest due on it that the present action has been instituted. Elizabeth McConnell, the plaintiff in this action, was divorced from her husband, Frederick A. McConnell, by the decree of this court in 1825. She claims to be the owner of this

[McConnell v. Wenrich.]

bond now, and to be entitled to recover the amount of it from the defendants, with interest from the time the money was received by them.

She alleges that the assignments made by her husband, Frederick A. McConnell in 1819, to Robert McConnell and Daniel Vonneida, and by Robert McConnell to Daniel Vonneida, *not being made for a valuable consideration*, did not divest her right to this bond, which was her property when it was executed, subject only to the power of her husband to bar her claim to it in certain formal modes recognised by the law, none of which, as she alleges, have been adopted in the transfers given in evidence here. She contends that the assignments of F. A. McConnell and Robert McConnell were insufficient to bar her claim, and also that the assignment to John Wenrich in 1820 did not bar her, although it would seem, from the evidence, that the latter assignment was made *for a valuable consideration*, to wit, the value of the bond as agreed upon by the parties at the time of assignment : of this fact the jury are the judges.

The defendants allege that the plaintiff took part in the action brought by them to recover the money from Shaffer and Hannah Miller, who was terre tenant of the land taken by Shaffer in the Orphans' Court; that she knew they were claiming the money as their testator's property, and that she suffered them to pay it out to legatees without notice, and is therefore estopped to claim it from them in this action. This is believed to be a full, though brief statement of the matters in controversy here, and will, with the court's explanation of the law and their answers to the legal points propounded to them by the counsel of the respective parties, enable the jury to determine as to the party for whom they shall render their verdict.

He further charged, *inter alia* :—

We have stated that the husband's assignee without value succeeded to all the husband's rights, and among these was the right to assign for value or otherwise ; if he assigned the chose without value, it will not be doubted, we presume, that the second or any subsequent assignee without value could reduce it into possession *during coverture*, and the only reason he could not do so afterwards would be his want of equity founded on value paid; this, if correct, would show that every successive assignee without value would succeed to all the husband's rights by virtue of the assignment, and when value has been paid by any assignee during coverture, the thing sought to be recovered by him has been sold, and not given away, and the assignee has the equity of a purchaser to invoke the aid of the law to enable him to recover. In this case, then, the defendant's testator had a right to recover the money due on the bond in question and retain it, unless the jury shall be of opinion that the assignment to him was *without* valuable consideration. If the assignment to John Wenrich was made during the subsistence

of the marriage, and was for the value of the bond as estimated by the parties at the time, then Wenrich's executors were entitled to recover this money and retain it, and the plaintiff cannot recover in this suit.

The *seventh* point submitted on part of *defendants* was as follows:—

That even if the jury believe that the assignment to Robert McConnell and Daniel Vonneida was not for a valuable consideration, yet inasmuch as that to John Wenrich was for value, it amounted to a reduction into possession of the debt, and divested all right of the wife, and she cannot recover.

Ans. If the assignment to John Wenrich was as herein stated, the law is with the defendants, and the assignment made for value during coverture would bar the wife's right to recover.

Error was assigned to the admission of evidence, and that the court erred in charging :

1. In their answer to the plaintiff's *fourth* point. That a subsequent assignee of a wife's chose in action who pays value, during coverture, can recover the amount due after death, or divorce of her husband, and defeat her survivorship, although the assignment by the husband to his assignor was made without value.

2. In their answer to that part of the plaintiff's *fifth* point which relates to subsequent assignees.

3. In their answer to the plaintiff's *ninth* point, that the wife's right of survivorship to her chose in action is barred in the hands of a subsequent assignee, who paid value for it, although the husband assigned it to the first assignee merely as a collateral security and without value.

4. The court erred in their charge to the jury generally.

The case was argued by *J. Glancy Jones*, for the plaintiff in error.—The main point is, whether a wife's choses in action, if assigned by the husband during coverture, without value or as a collateral security, will survive to her on his death or her discoverture; and whether her right of survivorship can be barred by any subsequent assignment made by a stranger, *even for value.*

The first part of this point is not denied, as I understand, and the point stands good as a general proposition; but the court charged, that the latter part formed an exception to the rule, and as this case fell within the exception, they took the case from the jury, and informed them, if they were wrong the Supreme Court would set them right.

And to prove that the court erred in this point, the following authorities were cited:—

Bates *v.* Dandy, 2 *Atkyns* 207 ; Hornsby *v.* Lee, 2 *Mad.* 16 ; Purden *v.* Jackson, 1 *Russell* 1 ; Honner *v.* Morton, 3 *Russell* 298 ;

*Glancy on Married Women*, 110, 121–124, and from 140 to 146; *Siter's Accounts*, 4 *Rawle* 472–83; 5 *Johns. Ch. Rep.* 207; Krumbaur *v.* Bart, 2 *W. C. C. Rep.* 406–9; 5 *Cow.* 597; Petrie *v.* Clarke, 11 *Ser. & R.* 388; Hartman *v.* Dowdel, 1 *Rawle* 281; Woelper's Appeal, 2 *Barr* 73; Lodge *v.* Hamilton, 2 *Ser. & R.* 493; Ferree *v.* Com'th, 8 *Ser. & R.* 315.

*N.* and *W. Strong* were for defendants.—The errors assigned in the charge of the court raise the question whether a voluntary assignee of the husband may assign for value and the second assignee hold against the wife after her discoverture.

The court charged that the assignment by the husband of the wife's chose as a collateral security, (being an assignment not for value,) does not defeat the wife's survivorship. It may however be doubted whether even a voluntary assignment, *if it be a legal one*, does not destroy the wife's claim by survivorship. In England no chose in action is assignable at law, but an equitable assignment for value prevails against the wife's title. The reason why a voluntary assignment does not, is that the assignee is destitute of equity, and therefore the chancellor refuses his aid to the assignee: Hartman *v.* Dowdel, 1 *Rawle* 281. But in Pennsylvania, in some cases, this reason fails. The act of May 28, 1715, makes certain assignments of bonds *legal*. In those cases the assignee needs no aid from the chancellor. In this instance the assignment of the bond was a *legal* transfer, and there is therefore the same reason for the wife's survivorship being barred as exists in the case of a release by the husband. Yet a release by the husband bars, though he does not receive the money. See cases collected in *Glancy on Married Women*, 111; Hartman *v.* Dowdel, 1 *Rawle* 281.

But the defendant in error need not contest this question. In this case there was an assignment by the assignee of the husband, for value paid. (Vide Vonneida's testimony.)

It matters not that the money was not payable until after discoverture happened: *Shepherd's Touchstone* 333; *Glancy* 111; 4 *Rawle* 475, Siter's case.

By the marriage, the husband succeeded to the wife's power over the wife's choses in action: Siter's case, 4 *Rawle*. He only could exercise it. He may do what she could do if sole, and as she could sell, or constitute an attorney to sell her chose in action, he, having succeeded to her power, may do the same. The assignment by the husband, though voluntary, authorized his assignee to exercise, during the coverture, all the rights of ownership, and among them was the right to sell. The voluntary assignee stood in the place of the husband, and during coverture could reduce the chose into possession, and bar the wife's right by survivorship. This is admitted in Burnet *v.* Kinaston, 2 *Vern.* 401, which is the leading case. But reduction into possession is reduction of the *title*, not

[McConnell *v.* Wenrich.]

of the money secured by the chose, "*the exercise of some act of ownership over it :* Siter's case, 4 *Rawle* 374 ; Woelper's Appeal, 2 *Barr* 71 ; 7 *W. & Ser.* 168, Shuman *v.* Reigart.

A sale by the first assignee was therefore a sale by the husband, and was a reduction of the title to possession, and barred the wife's survivorship.

That the husband may destroy the wife's right by survivorship by the acts of his attorney is undoubted : *Comyn's Dig. Baron and Feme,* E. 3 ; *Moore* 452, Huntley *v.* Griffith ; 5 *Johns. Ch.* 250. BLACKSTONE calls the assignee the attorney of the assignor.

Again, Frederick A. McConnell assigned, it is said, as collateral security, and therefore without value, to Vonneida. But the holder of a collateral may use it to pay the debt due him, either by collecting the sum secured by it, or by sale, and if he sell, the right of the original holder is gone.

John Wenrich bought the bond, seeing upon the bond his assignment purporting to be for value. On the faith of that assignment he released his claim and paid his money. Had the first assignment been fraudulent and therefore void, a subsequent assignee for value *without notice* would be protected. *A fortiori* would John Wenrich in this case : 4 *Watts* 85, Price *v.* Junkin ; 4 *id.* 424, Fetterman *v.* Murphy ; 3 *W. & Ser.* 479, Thompson *v.* Lee ; 1 *Amer. Leading Cases* 67, and cases there cited.

The opinion of the court was delivered June 27, by

ROGERS, J.—This is an action of assumpsit, for money had and received to the use of the plaintiff. The plaintiff seeks to recover on the plea that the bond assigned to the defendant being a chose in action belonging to her, not reduced into possession, nor assigned for a valuable consideration, during coverture, survived to her, after the dissolution of the marriage. That consequently, as survivor, she is entitled to recover the proceeds of the bond, as money received for her use. The plaintiff contends that the assignment of F. A. McConnell, her former husband, to Robert McConnell and Daniel Vonneida, and by Robert McConnell to Daniel Vonneida, not being made for a valuable consideration, does not divest her right to the money, nor does the subsequent assignment to John Wenrich, the defendant, though for a valuable consideration, bar her claim. Numerous errors, as usual, are assigned, most of which touch not the merits of the case. The argument has been narrowed down to two points ; to one of which only will the attention of the court be directed, as that disposes of the whole case. The point to which I refer is, granting that as to the original assignees the wife is not bound on the principle of survivorship ; yet inasmuch as the transfer by Vonneida to Wenrich is a legal assignment for a valuable consideration, this suit can be sustained. In other words, as in Mott *v.* Clark, 9 *Barr* 405, the question is

whether Wenrich stands in the same or a better situation than his assignor Vonneida. It must be taken as part of the case, and such was the undisputed fact, that Wenrich was entirely ignorant that no value passed between the husband, the original assignor, and his immediate assignees. He therefore stands in the favorable position of an innocent purchaser for value, without notice, either actual or constructive, and, as will be hereafter shown, without any knowledge, or the means of knowledge, to protect himself against combination or fraud. The point arises on the answer to the defendant's *seventh* proposition. The court instructed the jury that if they believed the assignment to Robert McConnell and Daniel Vonneida was *not* for a valuable consideration, yet inasmuch as that to John Wenrich was for value, it amounted to a reduction into possession of the debt, and divested all the right of the wife. We think that the court was right in instructing the jury that on that state of facts the plaintiff could not sustain her suit. It must be borne in mind that the question is not, whether Wenrich knew that the bond assigned was the product of the wife's share of her father's estate, for that may be admitted without affecting the case, but whether he knew, or had the means of knowing, that the bond was assigned to McConnell and Vonneida without consideration. On that point the whole case turns. That he had actual notice of that essential fact is not alleged. Had he then the means of knowledge, is the next inquiry? The assignment, be it remembered, purports on its face to be for a valuable consideration. It must also be confessed the husband had the undoubted right to pass the title of his wife's chose in action for value. If this be so, was there any laches on the part of the defendant, when he purchased and paid his money, in acting on the reasonable supposition that he received a valid title to the bond and its subsequent proceeds. This would appear to me to be equitable and just, for without this he has no means of protecting himself against a fraudulent transfer. As is ruled in Mott *v.* Clark, 9 *Barr* 405, a case very like this, no man can be affected with a latent equity of which he has no knowledge, or possibility of knowledge, and against which it would be impossible for him, with the most careful diligence, to guard himself. In cases of the transfer of the choses of the wife, there can be no safety, for it would be utterly impossible for a subsequent assignee to guard against fraudulent combinations between the husband and his assignee. To whom, it may be asked, could the second purchaser or assignee apply for information? It would be ridiculous to answer, to the apparent owner of the chose, or to the husband of the assignee. They have already asserted, on the face of the assignment, that it was transferred for value. On the supposition that it was an intended fraud, the inquiry would be fruitless, and moreover, the question would imply a doubt as to their honesty and truth. The law is too reasonable to require any thing either vain

or frivolous. It has been faintly urged that information could be obtained from the wife. But what information could be drawn from her? That the bond was her chose, even if that was asserted, which it was not, would be beside the question; for be it remembered, the only thing that is material is whether any consideration passed between the husband and the assignee. And on that point, what knowledge could the wife be supposed to have, which would render an inquiry of her either necessary or proper? It would be justly regarded by both, if not an insult, as an impertinent interference with business pertaining to the husband alone, intermeddling with his unquestioned right of absolute disposition and transfer. Our own cases, Mott *v.* Clark, 9 *Barr* 405, and Taylor *v.* Gitt, 10 *Barr* 428, are full to the point. As this disposes of the whole case, we deem it unnecessary to express any opinion on the other points, one of which only has been much pressed.

Judgment affirmed.