MAY TERM, 1881, No. 160.			MAY 24TH, 1881.

# Appeal of the Mifflin County National Bank.

1. The assignee of a judgment or mortgage takes it subject to all the defences of the obligor against the obligee, but not subject to the secret equities of third persons.

2. One who discounts a promissory note is not entitled to the proceeds of a judgment given by the maker as indemnity to the indorser, against a *bona fide* assignee of the judgment for value.

3. That the assignee, at the time of his purchase, did not inquire of all the obligors uniting in the judgment is immaterial.

APPEAL of the Mifflin County National Bank, from the decree of the Court of Common Pleas of *Mifflin County*, making distribution of the fund in Court arising from the sheriff's sale of the personal property of the Screw Mower and Reaper Company.

[Appeal of the Mifflin County National Bank.]

The fund in court arose from the sale, under a writ of *fieri facias*, of the personal property of one of the defendants, and amounted to $955. This writ was issued on a judgment upon a warrant of attorney in a judgment note, dated August 22d, 1876, for $5000, payable one day after date, given by "The Screw Mower and Reaper Company, Adam R. Reese, Henry M. Seiple, Thomas Reese, Jr., and Godfrey R. Reese, doing business under the name of the Lewistown Engine and Brass Company," to "Andrew J. Farrand or his assigns." It was signed on behalf of the Screw Mower and Reaper Company by Peter V. Staats, president, and John W. Dean, secretary, and by the others in person, and was duly sealed. Judgment was entered upon it, August 24th, 1876, against all the parties doing business under the name and firm of the Lewistown Engine and Brass Company. This company was a partnership, constituted as stated in the judgment note, and it executed, April 15th and 19th, 1876, respectively, two promissory notes to the Mifflin County National Bank, for $5000 in the aggregate, with 5 per cent. collection fees. Adam R. Reese, A. J. Farrand, and T. B. Reese were the sureties on these notes. The judgment note above set forth was given to A. J. Farrand to indemnify him, A. R. Reese and T. B. Reese, as such sureties. January 1st, 1877, Farrand assigned this judgment together with another he had against the same parties for $7000 to John M. Weldon. He had previously transferred to Weldon property to the value of $2500 or $2800 that he had realized upon the judgment by the sheriff's sale of the personal property of the Lewistown Engine and Brass Company. For these transfers Weldon paid $3500, the sum of $1000, or $1500, in cash and the balance in notes. At the time of the purchase of the judgment by Weldon there were present John W. Dean, secretary of the Screw Mower and Reaper Company, H. M. Seiple, Thomas Reese, Jr., and Godfrey R. Reese, as well as Farrand. Adam R. Reese was not present. Weldon inquired of those present whether the judgment was all right, and was assured by Dean and Farrand that it was. No inquiry was made as to the consideration of the judgment. Farrand and the Lewistown Engine and Brass Company made an assignment for the benefit of creditors, August 25th, 1876, and the entire claim of the Mifflin County National Bank remained unpaid.

The auditor to whom the fund was referred for distribution awarded it to the Bank, holding that it is a well-settled equitable principle, that where a surety, or a person standing in the situation of a surety for the payment of a debt, receives a security for his indemnity, and for the discharge of

such indebtedness, the principal creditor is, in equity, entitled to the full benefit of that security, and that Weldon, not having inquired of Adam R. Reese, he was not a *bona fide* holder for value without notice, every purchaser of a chose in action not negotiable taking it subject to all the equities which the debtor may then have if not previously inquired of concerning defences.

Exceptions to this award were filed by Weldon and were sustained by the Court below, BUCHER, J., who said: "The purchaser, mindful of the rule of law, which declared to him that if he bought a chose in action not negotiable without inquiry from the obligor, he took it subject to any defence he might have against the obligee, he seeks to protect himself against any defence the obligor may have to the judgment. Like a prudent man should do he gathers all the members of the partnership about him, save one, who were the obligors in the judgment, and puts the inquiry to them: Is the judgment all right? This, too, before he parts with his money, and upon his being assured that it was, he enters into the contract of purchase with the obligee, pays his money, and takes the assignment. Then when he claims that he is an innocent purchaser without notice, he is met with the retort: No, you are not; you were guilty of negligence. You inquired of all the partners but one; but you should have inquired of all to bind the firm. The mere statement of the proposition confutes it. It is scarcely necessary to cite authorities for the proposition that the declarations of one partner are binding upon the firm, and that inquiry of one partner was sufficient to bind the partnership. . . . We have it, then, undeniably established that Weldon inquired of the obligor before he parted with his money, and that he bought and paid for the judgment upon the faith of the assurances given him by the obligors that it was all right. This made him an innocent holder for value, and he took the obligation free from all equities between the original parties to it, and, *a fortiori*, from the secret equities of third parties. If he had bought without inquiry, and was not an innocent holder, he could have taken the obligation subject only to the secret equities of the obligor or debtor, and not to those of strangers of which he was ignorant."

The bank appealed and assigned this finding of the Court as error.

*A. Reed* for the appellant.

The record shows that on August 24th, 1876, all the property of the firm was sold on execution, and that on the 25th of August, 1876, it made an assignment for the benefit of

creditors. Either of these facts worked a dissolution of the firm, *ipso facto* : Cochran *v.* Perry, 8 W. & S., 262; McKelvy's Appeal, 72 Penna. State Reps., 409; Reppert *v.* Colvin, 12 Wr., 248; Collier on Partnership, p. 109.

The partnership then being dissolved long before the assignment of the judgment by Farrand to Weldon, an inquiry by Farrand of some of the late partners of that firm, or rather an inquiry in their presence, will not bind those who were not there, and not represented : Burns *v.* McKenzie, 23 Cal., 101; Gleason *v.* Clark, 9 Cowen, 59; Baker *v.* Stackpoole, 9 Cowen, 434; Robbins *v.* Willard, 6 Pick., 464; Miller *v.* Neimerick, 19 Ill., 172; Schoneman *v.* Fegley, 7 Barr, 433; Bispham *v.* Patterson, 2 McLean, 87. The Court has clearly demonstrated that Weldon would have been postponed but for the fact of his inquiring of some of the obligors on the bond, and as he did not inquire of the Screw Mower and Reaper Company, or of Adam R. Reese, they are unaffected by the assignment.

*Woods* and *McKee* for Weldon, the appellee.

While it is true that when a party purchases and takes an assignment of a judgment against another without inquiring of the debtor whether he has any defence to it that he takes subject to the secret equities of the debtor, it is equally true that in Pennsylvania he does not take it subject to any secret equities of strangers of which he was ignorant : Mott *v.* Clark, 9 Barr, 399; Taylor *v.* Gitt, 10 Barr, 428; McConnell *v.* Wenrich, 4 Harris, 365; Hancock's Appeal, 10 Casey, 156.

The opinion of the Court was delivered by GREEN, J.

It was found as a fact by the learned judge of the Court below, and is not denied, that Weldon paid a valuable consideration for the judgment of Farrand against the Lewistown Engine and Brass Company. It was also found that before, or at the time he purchased the judgment, he inquired of several of the parties, who, as partners composing the defendant company, executed the confession of judgment in question, whether the judgment was all right, and was assured by them that it was. It is not pretended that Weldon had any actual notice of any equity existing in the appellant, or in A. R. Reese, to have the judgment applied to the benefit of either of them. In point of fact, neither the company defendant, nor any of the parties who signed the confession of judgment, have any defence whatever against its payment. Weldon holds, by valid assignment, the entire title of the plaintiff in the judgment. The fund in court is the proceeds

of an execution issued on this judgment, and it has been claimed by, and has been awarded to, Weldon as the assignee of the plaintiff Farrand.

Why should he not have it? The only reason urged is, that the appellant, having discounted certain paper given by the company defendant, indorsed by A. R. Reese, A. J. Farrand, and T. B. Reese, had an equity to have the judgment applied to its use, because it was given to indemnify the indorsers against their liability as such. The claim is pressed upon the ground that Weldon made no inquiry of A. R. Reese when he took the transfer, and that the latter was not bound by the declarations of his co-obligors, because the partnership was then dissolved. We do not perceive the materiality of this contention. The appellant's claim is in no sense whatever a defence against the judgment. On the contrary, it is a claim to hand the fruits of the judgment over to the appellant. In other words, the appellant claims the ownership of the judgment, not by force of any transfer or assignment, but because of its equitable right as a creditor, to have securities given by the debtor to protect the indorsers, applied in satisfaction of the debt. This would be all very well as between the bank and Farrand, if they only were the parties to the controversy; but how can such a claim affect an innocent purchaser from Farrand, for value actually paid, and without any notice of the equity set up by the appellant? It is very true that the assignee of a judgment or mortgage takes it subject to all the defences of the obligor against the obligee; but it is equally true that he does not take it subject to the secret equities of third persons. This is very familiar doctrine, and has been repeatedly enforced by this Court. In Davis v. Barr, 9 S. & R., on page 140, it was said by GIBSON, J.: "It certainly is not a general principle of equity, that a purchaser for valuable consideration of the legal title to any kind of property, should take it subject to an equity of which he had not notice." And again, on page 141: "But with any agreement between the original parties inconsistent with the purport or legal effect of the instrument, the assignee has nothing to do. No such agreement is within the purview of the act, and the assignee is not bound to call on the obligor for information about matters, the existence of which he has no reason to suspect, the necessity of inquiry being limited, as I have said, to want of consideration and set-off."

In Mott v. Clark, 9 Barr, on page 404, it was said of the assignee of a bond and mortgage: "He takes it subject to all the equity of the mortgagor, but not to the latent equity of a third person. To subject him to such an equity, he

must have express or constructive notice at the time of the assignment."

The same doctrine has been held in the cases of Taylor v. Gitt, 10 Barr, 428; Wetherill's Appeal, 3 Grant, 281; McConnel v. Wenrich, 4 Harris, 365; and Twitchell v. McMurtrie, 27 P. F. S., 383. As A. R. Reese had no defence against the judgment, it was not necessary to apply to him to learn whether he had any secret agreement with the appellant that the judgment was to be held for the benefit of the latter. In any point of view, Weldon was not subject to the duty of inquiry for such latent equities as it is sought to set up against him, and can stand upon his clear legal title to the judgment and its fruits.

Decree affirmed, and appeal dismissed at the costs of the appellant.