Cancilla, Appellant, *v.* Bondy et al.

250

Argued October 1, 1945. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

reargument refused January 7, 1946.

*Walter E. Glass,* with him *Anthony Johnson,* for appellant.

*Bruce A. Sciotto,* with him *Weimer, Bennett & Jones,* for appellee.

OPINION BY MR. JUSTICE HORACE STERN, November 26, 1945:

A widow, claiming that she had been defrauded of her dower rights by reason of a voluntary mortgage which her husband had placed upon his property, brought a bill in equity against the mortgagee and his assignees to have her rights in the property declared and protected. She now appeals from the dismissal of the bill by the court below.

On August 5, 1926, Tony Cancilla married, as his second wife, the plaintiff, Lena Cancilla. He owned a property in Johnstown, the value of which was about $7500. On December 1, 1926, he gave his grandson, Anthony Lima, his bond for $10,000 to "become due and payable at the date of the death of Tony Cancilla, mortgagor, with interest from the said date of death of Tony Cancilla, at six per cent per annum". He also executed a mortgage in favor of Lima upon this Johnstown property reciting the terms of the bond and stating that the mortgage was for the purpose of securing its payment. On May 24, 1929, he gave Lima another bond for $3000, payable in five years from the date thereof with interest at six per cent per annum, and accompanied it with a

second mortgage on the property; this bond and mortgage contained a clause that "should the mortgagor at any time during his lifetime make sale of the mortgaged premises so that he may use the proceeds thereof for his own maintenance and support, that not only this mortgage, but also the bond it secures shall be absolutely void." The evidence is clear that no consideration was received by Cancilla for either of these bonds or mortgages.

Cancilla died on April 3, 1941, leaving as his sole survivors Lima and the plaintiff; there were no children born of his second marriage. In his will he devised the Johnstown property to Lima and his residuary estate to the plaintiff, but he did not own anything at the time of his death except the mortgaged premises. On April 10, 1941, Lima assigned the two bonds and mortgages to Stephen J. Bondy, who paid therefor the sum of $6400 and in addition was obliged to pay several hundred dollars of delinquent taxes, making the total consideration approximately $7500. On July 12, 1941, Bondy assigned the bonds and mortgages to the Moxham National Bank as security for an obligation on a note. Previously thereto, on May 6, 1941, he had issued a scire facias against Cancilla on the $10,000 mortgage, with notice to plaintiff and to Lima. The sheriff properly served plaintiff in accordance with the provisions of the Act of July 9, 1901, P. L. 614, sec. 1, cl. 10, but she made no defense and did not participate in any manner in the proceedings. On May 26, 1941, Bondy took judgment for $10,553.33 against Cancilla, and also against Lima and plaintiff as "sole devisees and terre tenants for want of an appearance." A sheriff's sale was had on September 5, 1941, at which Bondy purchased the property, presumably for the benefit of himself and the bank as their interests might appear; he has since received a title deed from the sheriff. More than a year thereafter, on December 10, 1942, plaintiff filed an election to take against her husband's will, and then brought the present bill in equity against Lima, Bondy

and the bank, praying that an undivided one-half interest in the property, to which she claimed to be entitled, be declared free from the lien of the mortgage judgment, and that the bonds and mortgages, the judgment, and all subsequent proceedings thereunder, including the sheriff's sale, be declared fraudulent and void as against her. A decree pro confesso was obtained against Lima; the court dismissed the bill as to the other defendants.

In justice to Cancilla it may be added, although it does not affect the issues here involved, that he had owned another property in Johnstown of about the same value as the one now in litigation, and, shortly after giving the $10,000 mortgage to Lima, he sold this other property and with the proceeds bought a home in Dunkirk, New York, which he placed in the names of himself and plaintiff, so that she acquired title thereto at his death as tenant by the entireties.

It has many times been judicially declared in Pennsylvania that a man may do what he pleases with his personal estate during his lifetime since his wife has no right, title or interest in such property until after his death; therefore he may make a gift of it even though he does so for the purpose of preventing his wife from inheriting any portion of it; the only limitation is that he should actually part with the title and not retain any collusive or secret ownership.[1] With real estate, however, the situation is entirely different because a wife has an inchoate interest in her husband's real property; therefore, while he may mortgage such property if the transaction is bona fide and for a consideration, he cannot deprive his wife of her dower rights, without her consent, by creating a voluntary mortgage or judgment, since the giving of such a mortgage or judgment would be equivalent to a pro tanto conveyance of the real es-

---

[1] *Dickerson's Appeal*, 115 Pa. 198, 211, 8 A. .64, 70; *Lines v. Lines*, 142 Pa. 149, 21 A. 809; *Windolph v. Girard Trust Co.*, 245 Pa. 349, 363, 364, 91 A. 634, 638; *Benkart v. Commonwealth Trust Co.*, 269 Pa. 257, 112 A. 62; *Potter Title & Trust Co. v. Braum*, 294 Pa. 482, 144 A. 401; *Beirne v. Continental-Equitable Title & Trust Co.*, 307 Pa. 570, 577, 578, 161 A. 721, 723; *DeNoble v. DeNoble*, 331 Pa. 273, 200 A. 77.

tate in fraud of her dower rights: *Killinger v. Reidenhauer, Administrator,* 6 S. & R. 531, 534, 535; *Waterhouse v. Waterhouse,* 206 Pa. 433, 55 A. 1067. Moreover, even in the case of his personal property, he cannot make a fraudulent gift of it in contemplation of death, or to take effect upon death, and thereby defraud his wife's statutory rights as his widow: *Hummel's Estate,* 161 Pa. 215, 28 A. 1113; *Young's Estate,* 202 Pa. 431, 441, 51 A. 1036, 1038.

The execution of the mortgages by Cancilla to Lima was a patently crude attempt to destroy plaintiff's dower rights in the property and was a poor subterfuge for a will which could not have been effectual for the purpose. The mortgages were therefore voidable as to her. Did Bondy acquire any less vulnerable title to them as assignee? A bona fide purchaser from a fraudulent grantee is protected against the equities of third persons not arising out of the instrument, a bona fide purchaser being understood to be one who gives consideration and takes without either actual or constructive notice of the rights of others in the property.[2] But neither Bondy nor the bank offered any evidence to prove that they were in that class. True, they gave consideration for the assignments, but the burden was upon them to establish not only that they did not know that the bonds and mortgages had been executed by Cancilla without any consideration, but also that there was nothing to put them on inquiry as to that fact; this burden they made no attempt to meet. The terms of the instruments on their face were sufficient to put any prudent purchaser on guard as to whether or not such consideration had been given; in the first bond and mortgage the principal was not to be paid until after the obligor's death and was

---

[2] *Thompson v. M'Kean,* 1 Ashm. 129; *Hood v. Fahnestock,* 8 Watts 489; *Mott v. Clark,* 9 Pa. 399; *McConnell v. Wenrich,* 16 Pa. 365; *Sinclair v. Healy,* 40 Pa. 417; *Mullison's Estate,* 68 Pa. 212, 216; *Appeal of the Mifflin County National Bank,* 98 Pa. 150; *Levy v. Cooke,* 143 Pa. 607, 614, 22 A. 857, 858; *Boyer v. Weimar,* 204 Pa. 295, 54 A. 21; *Lasser v. Philadelphia National Bank,* 321 Pa. 189, 183 A. 791.

not to bear interest until that time, and in the second bond and mortgage the obligor was to be allowed to sell the property at any time he desired in order to use the proceeds for his maintenance and support and in that event the bond and mortgage were to become "absolutely void"; such terms and provisions are rare, not to say unique. Moreover, the amount of even the first bond and mortgage alone was plainly in excess of the value of the property. It must be concluded, therefore, that the title to the bonds and mortgages in Bondy and in the bank was no better than it was in Lima, the original mortgagee.

This brings us to the final and most important question involved, and one which presents a fatal barrier to plaintiff's assertion of rights to which she would otherwise have been entitled. We refer to the fact that although in the foreclosure proceedings on the mortgage plaintiff was given notice and served with the writ, she made no defense and allowed judgment to be entered against her, the property to be sold, and title to be given by the sheriff's deed to Bondy. Even before the Act of July 9, 1901, P. L. 614, sec. 1, cl. 10, which provided that the real owners should be made parties, it was held that, if terre tenants were actually served or intervened, and if their title was derivative from that of the mortgagor, they were bound by the result of the proceedings.[3] If, on the other hand, they claimed title superior to that of the mortgagor, they were not obliged, or even allowed, to interject their title as an issue in those proceedings, but could assert it only in a subsequent action of ejectment or possibly, under certain circumstances, by a bill in equity,[4] and notwithstanding the passage of the Act

[3] *Nace v. Hollenback*, 1 S. & R. 540, 548; *Blythe v. McClintic*, 7 S. & R. 341, 344; *Dengler v. Kiehner*, 13 Pa. 38, 40, 41; *Stevens v. North Pennsylvania Coal Co.*, 35 Pa. 265; *Colborn v. Trimpey*, 36 Pa. 463; *Schnepf's Appeal*, 47 Pa. 37; *Hulett v. Mutual Life Insurance Co.*, 114 Pa. 142, 147, 6 A. 554, 556; *Federal Land Bank of Baltimore v. King*, 294 Pa. 86, 95, 96, 143 A. 500, 503, 504.

[4] *Catlin v. Robinson*, 2 Watts 373, 379; *Mitchell v. Kintzer*, 5 Pa. 216, 221; *Mitchell v. Hamilton*, 8 Pa. 486; *Dengler v. Kiehner*, 13 Pa. 38; *Drum v. Kelly*, 34 Pa. 415; *Colwell v. Easley*, 83 Pa. 31.

of 1901 the same distinction is still maintained, so that any party summoned as a real owner will not be required or permitted to prove a title in himself superior to, or wholly independent of, that of the mortgagor.[5]

While a wife's dower right is sui generis, and in some aspects may be regarded as paramount to the title of her husband, it is, in its origin and essence, an interest derivative from him, for it results only from the marital status and from his ownership of the property; she has no right independently of her husband's title. The reason why a superior title cannot be asserted in foreclosure proceedings is that the party owning such a title need not be concerned therein, for his rights will remain unaffected; as the mortgagor had no power whatever to lien the property the mortgage cannot possibly be good as against the holder of a paramount title. But in a case where, as here, a right of dower is involved, the widow *is* interested in the validity of the mortgage since her husband *has* the power to create a valid mortgage upon his property which would ordinarily destroy her dower interest and which would be ineffective in that regard only if given without consideration in fraud of her rights. Therefore her interest is not wholly paramount to, but has "connection with" his title (see *Colwell v. Easley,* 83 Pa. 31, 34) and she would be "prejudiced by the judgment" obtained on the mortgage (see *Catlin v. Robinson,* 2 Watts 373, 379). This makes it imperative upon her to assert her claim in the foreclosure proceedings and there test the validity of the mortgage as to her right of dower, the determining factor on that question being whether or not the mortgage had been given for a

---

[5] *Excelsior Saving Fund v. Cochran,* 220 Pa. 634, 70 A. 432; *Orient Building & Loan Association v. Gould,* 239 Pa. 335, 86 A. 863; *Handel & Hayden Building & Loan Association v. Elleford,* 258 Pa. 143, 146, 147, 101 A. 951, 953; *Mutual Guarantee Building & Loan Association v. Wilcox,* 273 Pa. 385, 117 A. 89; *South Central Building & Loan Association v. Milani,* 300 Pa. 250, 150 A. 586; *Porter v. Levering,* 330 Pa. 392, 395, 396, 199 A. 482, 484; *Cusano v. Rubolino,* 351 Pa. 41, 46, 47, 39 A. 2d 906, 908, 909; *Home Land Company v. Nye,* 93 Pa. Superior Ct. 452, 455.

consideration. She must raise and meet that issue to prevent the entry of a judgment against her; it is, as to her, a defense against the mortgage arising out of the instrument itself, and therefore she cannot ignore the foreclosure proceedings, allow the mortgagee to obtain title to the property by sheriff's deed, and then attempt by later independent proceedings to establish that the mortgage had been given by her husband without consideration and in fraud of her rights. See *McClurg v. Schwartz*, 87 Pa. 521; *Armstrong v. Connelly*, 299 Pa. 51, 55, 149 A. 87, 89; cf. *Buckby v. Sturtevant*, 28 Pa. Superior Ct. 552.

Decree affirmed; plaintiff to pay the costs.