ESTATE OF HARRY PRUDOWSKY, DECEASED, VIVIAN PRUDOWSKY, ADMINISTRATIX, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4217-68. Filed March 3, 1971.

*Thomas G. A. Herz* and *Arthur J. Blumenthal,* for the petitioner.
*Denis J. Conlon,* for the respondent.

FAY, *Judge:* Respondent asserted a deficiency in petitioner's estate tax of $20,799.09. Concessions having been made, the sole issue for decision is the includability in decedent's estate of certain stocks and savings accounts held by the decedent as custodian for his minor children.

#### FINDINGS OF FACT

Some of the facts are stipulated, and the stipulation of facts, together with the exhibits attached thereto, is incorporated herein by this reference.

Harry Prudowsky (hereinafter referred to as decedent) died intestate on December 20, 1963, being survived by his wife, Vivian, and their three minor children, Judith, Mark, and Sharon. Judith, the eldest of the three children, suffers from mental retardation caused by brain injuries.

Vivian having been duly appointed as administratrix of her husband's estate filed a Federal estate tax return with the district director of internal revenue, Milwaukee, Wis. At the time of filing the petition herein Vivian and her children resided in that same city.

Decedent, prior to his death, had been engaged in the practice of medicine for approximately 26 years. His untimely death was the result of a heart attack. Decedent was 51 years old at the time of death and until that time had enjoyed a life free from known heart trouble or other serious health problems.

During the years 1957 through 1963 decedent and his wife reported adjusted gross income, generally in excess of $40,000, reaching a high of approximately $59,500 in 1962. From time to time during this period petitioner made gifts to each of his three children of both stocks and cash. The gifts of stock were made pursuant to the Wisconsin Uniform Gifts to Minors Act (hereinafter referred to as the Act or the Wisconsin Act) and accordingly were held by decedent as custodian for the benefit of the minor children.

At the date of his death decedent was custodian of assets under the Act as follows:

| Child | Item | Description | Value |
|-------|------|-------------|-------|
| Mark Allen | 1 | Modern Federal Savings & Loan Association Account | $2,957.15 |
| | 107 | American Electric Power stock | 4,280.00 |
| | 35 | General Telephone Corp. stock | 1,091.56 |
| | 70 | General Telephone & Electronics Corp. stock | 2,183.13 |
| | 800 | Great Lakes Management | 3,600.00 |
| | 50 | Standard Oil Co. stock | 3,753.13 |
| | | | 17,864.97 |
| Sharon Faye | 1 | Modern Federal Savings & Loan Association account | 3,525.66 |
| | 32 | American Telephone & Telegraph Co. stock | 4,434.00 |
| | 70 | General Telephone & Electronics Corp stock | 2,183.13 |
| | 35 | General Telephone stock | 1,091.56 |
| | 800 | Great Lakes Management stock | 3,600.00 |
| | 156 | R.C.A. stock | 14,781.00 |
| | | | 29,615.35 |
| Judith | 1 | Modern Federal Savings & Loan Association account | 4,127.82 |
| | 1 | Guarantee Savings & Loan Association account | 1,942.71 |
| | 100 | Canada General Fund Lt. stock | 1,886.00 |
| | 67 | Electronics Capital Corp. stock | 540.19 |
| | 60 | General Telephone & Electronics Corp. stock | 1,871.25 |
| | 30 | General Telephone stock (presently G.T. & E.) | 935.63 |
| | 800 | Great Lakes Management stock | 3,600.00 |
| | 100 | Standard Oil (N.J.) stock | 7,506.25 |
| | 6 | Potter Instrument stock | 44.63 |
| | | | 22,454.48 |
| | | Total | 69,934.80 |

The shares of stock listed above were purchased with checks drawn on decedent's and Vivian's joint checking account. Decedent was the custodian for the stock from the time of purchase until his death, at which time Vivian was named as successor custodian. Records for purchases of the children's stock were maintained separate from records of decedent's own transactions. The stock certificates representing the children's shares were kept in a folder marked "Judy, Mark and Sharon." The stock belonging to each child was kept in separate compartments within this file.

Dividends paid on the stock held as custodian by decedent were deposited in the children's savings accounts. No part of the income from the stocks nor any of the proceeds of their sale were used by decedent to discharge his support obligation to his children.

As shown above, each of the children had bank accounts in the Modern Federal Savings & Loan Association (hereinafter referred

to as Modern Federal). In addition, Judith had a second savings account with the Guarantee Savings & Loan Association. The Modern Federal accounts consisted of cash gifts made by decedent plus dividends from each child's stock. From the early 1950s until 1963 the three Modern Federal savings accounts were held by decedent as trustee for each of his children. In October 1963 decedent closed all three accounts and opened new ones with the same institution in the name of "Harry Prudowsky, custodian for (one of his three children) under the Wisconsin Uniform Gifts to Minors Act."

Judith's account with the Guarantee Savings & Loan Association has been held from its inception by decedent as custodian.

Respondent determined that the stock and savings accounts discussed above were held by decedent as custodian; that under Wisconsin law a custodian can apply the custodial assets to satisfy obligations of support as well as terminate the relationship at will; that these powers fall directly within the purview of sections 2036 and 2038,[1] and consequently that the value of all of the items must be included in decedent's estate, resulting in the deficiency asserted herein.

### OPINION

The issue to be decided is whether the assets held by decedent as custodian at the date of his death are subject to such powers under the law of the State of Wisconsin as to warrant inclusion in the estate by virtue of either section 2036,[2] 2038,[3] or both.

Under the Wisconsin Uniform Gifts to Minors Act a custodian named thereunder has both the power to apply income or principal for the minor's support, maintenance, education, or benefit, and the power

---

[1] All statutory references are to the Internal Revenue Code of 1954, unless otherwise indicated.

[2] SEC. 2036. TRANSFERS WITH RETAINED LIFE ESTATE.

(a) GENERAL RULE.—The value of the gross estate shall include the value of all property to the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, under which he has retained for his life or for any period not ascertainable without reference to his death or for any period which does not in fact end before his death—

(1) the possession or enjoyment of, or the right to the income from, the property, or

(2) the right, either alone or in conjunction with any person, to designate the persons who shall possess or enjoy the property or the income therefrom.

[3] SEC. 2038. REVOCABLE TRANSFERS.

(a) IN GENERAL.—The value of the gross estate shall include the value of all property—

(1) TRANSFERS AFTER JUNE 22, 1936.—To the extent of any interest therein of which the decedent has at any time made a transfer (except in case of a bona fide sale for an adequate and full consideration in money or money's worth), by trust or otherwise, where the enjoyment thereof was subject at the date of his death to any change through the exercise of a power (in whatever capacity exercisable) by the decedent alone or by the decedent in conjunction with any other person (without regard to when or from what source the decedent acquired such power), to alter, amend, revoke, or terminate, or where any such power is relinquished in contemplation of decedent's death.

to terminate the relationship at his discretion.[4] The former power permits a parent who names himself as custodian of a gift to his minor child to apply the funds of that custodianship in satisfaction of his legal obligation of support; the latter creates a power of termination. We have consistently held that a tranferor-parent custodian, who dies while the custodianship is in effect, possesses at his death precisely those powers which under sections 2036 and 2038 result in the inclusion in his gross estate of the assets transferred. *Dorothy Stuit*, 54 T.C. 580 (1970), on appeal (C.A. 7, Aug. 24, 1970); *Estate of Jack F. Chrysler*, 44 T.C. 55 (1965), reversed on other grounds 361 F.2d 508 (C.A. 2, 1966).[5]

In *Stuit*, a grandmother transferred stock to herself as custodian for her minor grandchildren under the Illinois Uniform Gifts to Minors Act.[6] In holding the transferred assets includable in her estate, we said, "where one transfers property to oneself as custodian under the Model or Uniform Acts he retains the power to 'terminate' the custodial arrangement within the meaning of section 2038(a)(1)." Such a definite, clear, and unambiguous holding requires no further explanation. The applicability of this holding to the case now before us is also patent. Petitioner's efforts to distinguish *Stuit* or explain away the applicability of section 2038(a)(1) must fail. Petitioner's contention that the legislative intent in enacting the Uniform Act dictates a result contrary to the clear intent was raised and rejected in *Stuit*. The argument is likewise rejected here. The only attempt to distinguish *Stuit* is on the basis that in *Stuit* it is not revealed "that any evidence was presented concerning the 'substance' of the transaction or the deceased's motives in making the gifts of shares of common stock to her grandchildren." The import of this bare assertion is anything but clear and in the absence of elaboration by petitioner we assume that its argument is that in this case the substance of the transfer is something other than the creation of a custodianship. Having established no factual basis for such a contention we can only conclude that the substance of what transpired in both *Stuit* and the case now before us was no more than what the face of the transac-

---

[4] Section 319.64. Duties and powers of custodian.

(1) The custodian shall collect, hold, manage, invest and reinvest the custodial property.

(2) The custodian shall pay over to the minor for expenditure by him, or expend for the minor's benefit, so much of or all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor in the manner, at the time or times, and to the extent that the custodian in his discretion deems suitable and proper, with or without court order, with or without regard to the duty of himself or of any other person to support the minor or his ability to do so, and with or without regard to any other income or property of the minor which may be applicable or available for any such purpose.

[5] See also *Estate of Charles M. Jacoby*, T.C. Memo. 1970–165.

[6] The provisions of the Illinois Act are substantially identical to the relevant provisions of the Wisconsin Act now before us.

tion reveals, i.e., a gift pursuant to the relevant State's Uniform Gifts to Minors Act wherein the transferor named himself (or herself in the case of *Stuit*) as custodian. As to the motives giving rise to the transfers we think it clear that both were primarily motivated by a desire to provide a measure of independent security for the minors involved. That one recipient of decedent's generosity in this case is a retarded child whose misfortune virtually demands a source of future support is not a sufficient ground on which to distinguish the two cases. Moreover, what decedent's motives were in making the transfers involved herein is an irrelevant consideration. The critical question under section 2038(a)(1) is whether a transferor retained the power to terminate, not whether he intended to exercise it nor what his other underlying motives may have been. We thus conclude that petitioner's case is indistinguishable from *Stuit* and must be decided in accordance therewith.

In the *Estate of Jack F. Chrysler, supra,*[7] in addition to holding the transferred assets to be includable in decedent's gross estate under section 2038, we alternatively held for includability under section 2036. In so holding we said:

At the time decedent purchased the above securities having a total value at the date of his death of $78,816.01 he knew of the provisions of article 8-A of the Personal Property Law of New York for he made himself the custodian under that law. Section 266 of the law provides:

"2. (a) The Custodian shall hold, manage, invest and reinvest the property held by him as custodian, including any unexpended income therefrom and the proceeds of sale thereof, as hereinafter provided. He shall collect the income therefrom and apply so much or the whole thereof and so much or the whole of the other property held by him as custodian as he may deem advisable for the support, maintenance, education and benefit of the minor. * * *"

We agree with the respondent that under this section the decedent had the right as custodian to apply as much of the income as he may deem advisable for the support, maintenance, education, and benefit of the minor and that, therefore, he had made a transfer under which he had in effect retained the right to use the income from the property to discharge his legal obligation to support Helen. We think such a retained right is sufficient to require the property transferred to be included in the decedent's gross estate under section 2036(a), *supra.*

We now reiterate our position expressed in *Chrysler* that where one who has a legal obligation of support transfers property to himself as custodian under a Uniform Gifts to Minors Act containing provisions equivalent to those contained in the Wisconsin Act he thereby retains the power to apply said assets in satisfaction of his legal obligation. It follows therefrom that the value of the transferred assets is includable in the custodian's estate under section 2036.

---

[7] *Estate of Jack F. Chrysler,* 44 T.C. 55 (1965), reversed on other grounds 361 F.2d 508 (C.A. 2, 1966), involved New York's custodial statute with provisions substantially equivalent to those involved in this case.

Petitioner's argument that under Wisconsin law decedent would have been restrained from employing the custodial assets in satisfaction of his legal obligation of support is unacceptable. Such a contention is directly contrary to the express provisions of the Wisconsin statute.[8] Petitioner's argument that decedent's financial position, i.e., earnings of sufficient proportion to support his family make it clear that the custodial funds would never actually be used for support purposes, is likewise unpersuasive. It is decedent's ability to employ the funds for support should he so desire that is critical, not whether he ever actually does so or intends to. We are convinced that decedent did hold such a power and thus section 2036 requires that the value of the assets be included in his gross estate.

Three of the assets held by decedent as custodian require further explanation. When the three Modern Federal savings accounts were first opened in the early 1950s, decedent held the accounts as trustee for each of his minor children. In October of 1963 he canceled and closed each account opening three new accounts with the same institution under which he was named custodian of each account. In the *Estate of Jack F. Chrysler, supra,* a decedent died holding assets in his name as custodian for his minor children. However, at sometime prior to the creation of the custodianship Chrysler had made a transfer of the same assets to the same children. In reversing the Tax Court's holding of includability of the assets in decedent's gross estate under both section 2036 and 2038, the circuit court held that since the prior transfers were absolute and outright, the creation of the subsequent custodianship necessarily conferred upon decedent powers which he no longer possessed the authority to confer (absent his children's consent) and consequently the custodianship was ineffective. Absent the custodianship, decedent no longer possessed the fatal powers accompanying that office and hence the court found both sections 2036 and 2038 to be inapplicable. The crucial finding in reversing *Chrysler* was that the prior gift of the property was absolute and outright. No such finding can be made in the case now before us. Prior to the conversion to custodianship in October 1963, each of the three children's savings accounts were held by decedent as trustee. Under Wisconsin law savings account trusts (often referred to as Totten trusts) are revocable at the discretion of the settlor-trustee. *Boyle* v. *Kempkin,* 243 Wis. 86, 9 N.W.2d 589 (1943). Consequently, we view decedent's conversion to a custodianship as a revocation of the prior gift in trust and a new gift made pursuant to the Wisconsin Uniform Gifts to Minors Act.

---

[8] The statutory provision is set out in full in fn. 4 *supra.* The express language alluded to at this point is "with or without regard to the duty of himself * * * to support the minor or his ability to do so."

We are not unmindful of the harshness of the result reached both here and in *Stuit*. However, as we interpret the powers conferred upon a custodian by the State statute, the express provisions of sections 2036 and 2038 of the Internal Revenue Code dictate that such a result be reached.

*Decision will be entered under Rule 50.*