Schwartz Estate.

Argued January 14, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Daniel T. Deane, Jr.,* for appellants.

*Harry C. Liebman,* with him *Samuel M. Liebman,* for appellee.

OPINION BY MR. CHIEF JUSTICE JONES, October 4, 1972:

Decedent died testate on December 11, 1969, leaving, *inter alia,* one half of his residuary estate to his wife, Pearl Schwartz (appellee). Approximately three and one-half months prior to his death, decedent transferred a $37,000 bond of the Natural Gas Pipeline Company of America to his son by a prior marriage, under the Pennsylvania Uniform Gifts to Minors Act, Act of June 21, 1957, P. L. 358, §1 *et seq., as amended,* 20 P.S. §3601 *et seq.* (Supp. 1971), wherein decedent named himself as custodian. By court appointment, decedent's divorced wife became successor custodian of the bond for her son[1] and one Irwin Kraus was appointed guardian of the son's estate. Thereafter, appellee elected to take against the will pursuant to the Wills Act of 1947, Act of April 24, 1947, P. L. 89, §8, *as amended,* 20 P.S. §180.8 (Supp. 1971), as well as against all inter vivos conveyances, including the bond in question, under the Estates Act of 1947, Act of April 24, 1947, P. L. 100, §11, *as amended,* 20 P.S. §301.11 (Supp. 1971). The Orphans' Court Division of the Court of Common Pleas of Montgomery County considered the transfer of the bond by decedent as a "testamentary disposition" and determined that appellee was entitled to one half the value of the bond and all income derived therefrom. Appellants, the court-

---

[1] The Pennsylvania Uniform Gifts to Minors Act provides for designation of a successor custodian by the court upon the death of the original custodian. Act of June 21, 1957, P. L. 358, §8, *as amended,* 20 P.S. §3608 (Supp. 1971).

appointed custodian and the guardian of the son's estate, filed this appeal.

The overall issue presented by this appeal—one of first impression—is whether a corporate bond purchased by a decedent and registered in his name as custodian for his son under Pennsylvania's Uniform Gifts to Minors Act is subject to the widow's election under Section 11 of the Estates Act. Section 11 of the Estates Act of 1947 provides in pertinent part: "A conveyance of assets by a person who retains a power of appointment by will, or *a power of* revocation or *consumption* over the principal thereof, shall at the election of his surviving spouse, be treated as a testamentary disposition so far as the surviving spouse is concerned to the extent to which the power has been reserved . . . ." (Emphasis added). Section 5(b) of the Uniform Gifts to Minors Act grants the custodian the power to pay over to the minor or use the custodial property for the benefit of the minor at the discretion of the custodian "with or without regard to the duty of himself or of any other person to support the minor or his ability to do so." The precise issue before us is whether the statutory authority given a custodian to use the custodial property "with or without regard" to his duty to support the minor constitutes a "power of . . . consumption" under Section 11 of the Estates Act of 1947 when the donor-custodian is also the donee's father with a pre-existing duty of support.

Section 8 of the Wills Act of 1947, Act of April 24, 1947, P. L. 89, §8, *as amended,* 20 P.S. §180.8 (Supp. 1971), permits a widow to elect to take against her husband's will. The obvious philosophy of Section 11 of the Estates Act of 1947 as well as the common law, *Montague Estate,* 403 Pa. 558, 170 A. 2d 103 (1961), is to prevent a husband from indirectly disinheriting his wife through an inter vivos transfer while retaining

control over the use and enjoyment of the property during his lifetime. As noted by the official comments to Section 11 of the Estates Act of 1947, the section preserves for the surviving spouse the right to share in the decedent's assets "where the decedent has retained *important rights of ownership* at death." (Emphasis added). In such cases the law treats the husband as the owner of the property during his lifetime. If, however, the husband makes an outright gift which divests him of any possible interest so that the property can no longer inure to his benefit, nothing in our case law or statutes would allow his widow to claim any part of this property.

This case falls somewhere between the two extremes and forces us to decide whether the potenial benefit which the father-donor-custodian could have derived by distributing the custodial property to fulfill his preexisting support obligation amounts to such a retained "important right of ownership" that the transfer should be treated as a testamentary disposition under Section 11 of the Estates Act.[2]

Our past cases interpreting the interests that must be retained by the settlor or donor in order to invoke

---

[2] Since the argument has not been raised either below or on appeal, we will assume for the purpose of this decision that the donor-custodian could in fact substitute custodial funds for his legal obligation to support. However, it is less than clear under the language of Section 5(b) of the Uniform Gifts to Minors Act that the custodian could use the proceeds of the fund to defray a preexisting support obligation. Nothing in the Act states that the custodian can use the custodial property to relieve himself of his support obligations. In order to give the custodian maximum flexibility in the administration of the fund, the Act specifically provides that he can make distributions for the benefit of the minor "with or without regard" to his own or any other person's duty to support the minor. The plain meaning of the language does not indicate that the custodian can use the proceeds of the fund in lieu of an independent prior support obligation.

Section 11 of the Estates Act of 1947—"a power of revocation or consumption over the principal"—have involved situations where the interest retained by the decedent could be exercised to his own advantage.[3] Thus, in *Pengelly Estate,* 374 Pa. 358, 97 A. 2d 844 (1953), the settlor of the inter vivos trust reserved the power to consume the corpus of the trust for his maintenance and support "as may in [settlor's] opinion be necessary."

Unlike cases of this nature, a custodian under the Pennsylvania Uniform Gifts to Minors Act cannot consume the principal for his own benefit. While Section 5(b) of the Pennsylvania Uniform Gifts to Minors Act gives discretionary power to the custodian to pay over custodial property to the minor for the minor's "support, maintenance, education and benefit," the act nowhere permits the custodian to use the custodial property for the custodian's benefit. The appellee contends (supported by the dissent) that the decedent had precisely the same right over the property after he created the Uniform Gift fund as he had prior to the conveyance. However, under the provisions of the Act, this is clearly not the case. First, subsection (c) of Section 5 provides that *the court may order* the custodian to pay funds for the support, maintenance or education of the minor upon petition of a parent or guardian or of the minor himself if he has reached age fourteen (as in the instant case). Secondly, subsection (d) of Section 5 provides that the custodian must pay the entire unexpended fund over to the beneficiary at the time of his majority or to his estate in the event he dies a minor.

---

[3] The turning point in cases involving powers of appointment, *e.g., Behan Estate,* 399 Pa. 314, 160 A. 2d 209 (1960), has been the testamentary character of the inter vivos trust rather than the settlor's ability to benefit himself during his lifetime.

Thus, it should be clear that a custodian may exercise his power of consumption over the custodial property *solely* for the benefit of the minor and not for the custodian's benefit. As stated in Section 4 of the Pennsylvania Uniform Gifts to Minors Act, "[a] gift made in a manner prescribed in this act is irrevocable, and conveys to the minor indefeasibly vested legal title to the custodial property. . . ."

However, appellee argues that this decedent-custodian would benefit from the limited power of consumption since this custodial property might relieve the decedent-father of his duty to support his son, Marc Kevin Schwartz. Of course, this argument presupposes the existence of a support obligation on the part of the custodian that can be met by payments from the custodial fund and falls apart whenever a custodian owes no duty of support to the minor. Additionally, we believe the advantage to the present decedent, if there was any advantage, was too indirect and remote and cannot be classified as a power of consumption under Section 11. It appears to be impossible for the custodian to have used his statutory authority to his own advantage; his power of consumption could *only* be exercised to benefit the minor and the existence of such power of consumption has not been demonstrated on this record to have relieved, actually or potentially, the donor-decedent of his support obligation.

The appellee also cites several United States Tax Court rulings as persuasive authority for the proposition that in a Uniform Gifts to Minors transfer the donor who appoints himself custodian retains sufficient control over the property to make it includable in his estate under Section 11 of the Estates Act. Although this Court is not bound by the Tax Court's interpretations of the Internal Revenue Code in the interpretation of our own Estates Act, we are aware that our

decision in this case will mean that transfers which are included in the decedent's estate for federal tax purposes will not be included for purposes of the spousal election against testamentary dispositions under Section 11 of the Estates Act. There is no inconsistency, however, since the provisions of the Internal Revenue Code applied by the Tax Court are significantly broader than Section 11. Section 2036 of the Internal Revenue Code, Tranfers with Retained Life Estate, makes the value of any property transferred by the decedent includable in the gross estate *"to the extent of any interest therein"* (emphasis added) retained by the decedent, including "the right . . . to designate the persons who shall possess or enjoy the property or the income therefrom." Thus, in *Estate of Harry Prudowsky v. Commissioner,* 55 T. C. 890 (1971), the Tax Court did bring transfers made under the Uniform Gifts to Minors Act back into the estate of the decedent for estate tax purposes. The Tax Court concluded that as long as the decedent had the fund available to use at his discretion for the support of his children he retained sufficient interest to support taxation. *See, also, Estate of Jack F. Chrysler v. Commissioner,* 44 T.C. 55 (1965), *rev'd on other grounds,* 361 F. 2d 508 (1966).

Similarly, Section 2038 of the Internal Revenue Code, Revocable Transfers, includes in the gross estate of the decedent the value of any property transferred *"to the extent of any interest therein"* (emphasis added) if the decedent can "alter, amend, revoke, or terminate" the transfer. In *Dorothy Stuit v. Commissioner,* 54 T.C. 580 (1970), the Tax Court recovered the corpus of a Uniform Gift created by a grandmother for her grandchildren where she appointed herself custodian on the theory that she had control over the fund and could distribute it to the minors if she so desired and thus "terminate" the transfer. Even under the appellee's

construction of Section 11 of our Estates Act, such a transfer could not be treated as a testamentary disposition since the grandmother had no duty to support the minors.

In his capacity as custodian of the fund which he created for his son the decedent clearly had some power over its distribution. The Tax Court has determined that this retained power is sufficient under the provisions of the Internal Revenue Code to make the entire transfer part of the gross estate for federal estate tax purposes whether or not the donor-custodian owes a duty of support to the minor. However, we do not believe that the power retained by the decedent in his capacity as custodian of the gift was such an "important right of ownership" or "power of . . . consumption" to make the transfer a testamentary disposition under Section 11 of the Estates Act. The sole beneficiary of the irrevocable gift was Marc Kevin Schwartz, the decedent's son, who enjoyed indefeasibly vested legal title to the security. Any advantage retained by the decedent was too indirect and remote to constitute a power of consumption.

Decree reversed. Each party to pay own costs.

Mr. Justice EAGEN concurs in the result.

---

CONCURRING OPINION BY MR. JUSTICE MANDERINO:

I concur. The term, *power of consumption*, should not be used even in a qualified or restricted sense to describe any of decedent's prerogatives in relation to the custodial property under the Uniform Gifts to Minors Act. The decedent father, during his lifetime, might have *claimed* that the principal and income irrevocably given to his son under the Uniform Gifts to Minors Act fulfilled his legal support obligations to his minor son. However, this possible *claim* is not a retention of the power to consume. If a father estab-

lishes an irrevocable trust as to principal and income
for the benefit of a single child and specifically pro-
vides in creating the trust that the purpose of the trust
is to fulfill his support obligations, there is no reten-
tion of a power to consume and the trust would be in-
sulated from attack from a surviving widow claiming
her statutory election rights. To the extent, if any, that
the decedent father was obligated to support his son,
there existed a debtor-creditor relationship between the
father and the son. In effect, Edward Schwartz *could
have claimed* that use of the custodial property for sup-
port extinguished a debt created by law. He had no
other possible rights and had no other freedom so far
as the use of the custodial property was concerned.
How can the possible use of custodial funds to extin-
guish a specific legal debt to the named son in the gift
be considered the power to consume which will defeat
an inter vivos gift when a surviving spouse always
takes subject to *all debts* of the decedent. If Edward
Schwartz had never made the gift to his son under the
Uniform Gifts to Minors Act and had died owing any
payments of support for his son's benefit, this obliga-
tion would, without question, be payable before com-
puting the widow's one-half share of the residuary es-
tate. Widows, under the law, even when they elect
against the will, do not take to the detriment of ir-
revocable inter vivos gifts to children *or* to any legal
debts of the decedent. The decree is properly reversed.

---

DISSENTING OPINION BY MR. JUSTICE ROBERTS:

I am compelled to dissent. The majority reaches its
result by completely ignoring the controlling and un-
disputed facts found by the orphans' court and fully
supported by the record. It is conceded that Edward
Schwartz, the father, was both the donor and self-ap-
pointed custodian of the bond for his minor son which

he registered under the Uniform Gifts to Minors Act.[1] It is also unchallenged that the orphans' court specifically found that Edward Schwartz had a legal obligation to support his son. *Schwartz Estate*, 94 Mont. 168, 170 (1971).[2] Furthermore, Schwartz as father-donor-custodian, retained the power as custodian to "pay over . . . so much of or all the custodial property as the custodian [here the father] deems advisable for the support, maintenance, education and benefit of the minor."[3]

Having ignored these dispositive facts and statutory powers, the majority concludes that for the purposes of Section 11 of the Estates Act,[4] Edward Schwartz as father-donor-custodian with a support obligation to his son did not ". . . [retain] a power of . . . consumption over the principal thereof. . . ."[5] The majority deprives the widow of her statutory right created by Section 11 to elect a one-half testamentary share[6] of the $37,000 bond which decedent purchased and "conveyed" to himself as custodian.

---

[1] Act of June 21, 1957, P. L. 358, §§1 et seq., 20 P.S. §§3601 et seq.

[2] Judge TAXIS declared in his opinion: "It is undenied that Edward Schwartz had a support obligation to his minor son, and the Uniform Act, supra, reveals that he, as custodian, could have discharged that obligation from the custodial property, wholly or partly. . . ." *Schwartz Estate*, 94 Mont. 168, 170 (1971).

[3] Act of June 21, 1957, P. L. 358, §5, as amended, 20 P.S. §3605 (b) (Emphasis added).

[4] Act of April 24, 1947, P. L. 100, §11, as amended, 20 P.S. §301.11.

[5] Id. This section provides: "A conveyance of assets by a person *who retains a power* of appointment by will, or a power of revocation or *consumption over the principal thereof*, shall at the election of his surviving spouse, be treated as a testamentary disposition. . . ."

[6] Since appellee (Schwartz' first wife) had only one child, she was entitled to a one-half share of the conveyance. Act of April 24, 1947, P. L. 100, §11(b), as amended, 20 P.S. §301.11.

The Uniform Gifts to Minors Act empowers the custodian to: "pay over to the minor for expenditure by him or expend for the minor's benefit so much of or *all the custodial property as the custodian deems advisable for the support, maintenance, education and benefit of the minor,* in the manner, at the time or times, and to the extent that *the custodian* [here the father], *in his discretion, deems suitable and proper . . . with or without regard to the duty of himself* or of any other person *to support the minor, or his ability to do so,* and with or without regard to any other income or property of the minor, which may be applicable or available for any such purpose." Act of June 21, 1957, P. L. 358, §5, as amended, 20 P.S. §3605(b) (emphasis added).

I would conclude, as the trial court did, that the father-donor, by naming himself custodian of the property he "conveyed" to himself, retained by this device the statutory authority to utilize the proceeds of the bond for the support of his son. To the extent that the property is subject to being used for support, the father retains precisely the same right over the property which he held prior to the conveyance to himself as custodian. Section 11 of course would not apply if the custodian were someone *other* than the father-donor or if the donor-custodian had *no* parental support obligations to the donee of the bond under the act. Although neither of these situations is here involved, the majority nevertheless reaches its result as though they were.

Upon designating himself as custodian the father placed himself in the position where in his "discretion, as he deems suitable and proper"[7] he *could* utilize the custodial proceeds, *instead* of his personal assets, to

---

[7] Act of June 21, 1957, P. L. 358, §5, as amended, 20 P.S. §3605 (b).

satisfy *his* parental obligation to support his minor son. By means of his self-appointment as custodian, the father created for himself the exclusive right to decide whether to satisfy his support obligation from his personal assets *or* from the custodial assets. It is this exclusive power of decision—whether to satisfy his support obligation from custodial assets or from personal funds—which constitutes the statutory "power . . . of consumption" over the custodial assets under Section 11 and thereby subjects those assets to the widow's right of election.

By refusing to recognize the applicability of Section 11 to the decedent's conveyance into custodial assets here, the majority judicially sanctions that which the Legislature clearly and so expressly sought to prevent by Section 11—device and opportunity to diminish and deny statutorily granted marital property rights. The Uniform Gifts to Minors Act certainly was not enacted to provide a refuge from Section 11 for this $37,000 conveyance which was subject to be recalled at the will of the father-donor at any time to satisfy his parental support obligation.

The Joint State Government Commission which drafted the Estates Act of 1947 explained the purpose of Section 11: "This section preserves for the surviving spouse the right to share in the decedent's assets where the decedent has retained important rights of ownership at death. Rights of the surviving spouse in such circumstances have been recognized in other states. . . . However, Pennsylvania has given little opportunity to the surviving spouse to share when legal title has passed from the decedent prior to death. . . . Indeed, the situation in Pennsylvania has been such that it was stated correctly that 'It is only the stupid husband, who, against his wishes, would be forced to allow his wife to share in his personalty'. . . ." Act of April 24,

1947, P. L. 100, §11, as amended, 20 P.S. §301.11 (Commissions' Comment) (citations omitted).

In *Pengelly Estate,* 374 Pa. 358, 97 A. 2d 844 (1953), this Court observed that "the Act [Section 11] is confirmatory of a long existing public policy of the Commonwealth to protect the rights of widows." Id. at 369, 97 A. 2d at 849. In *Behan Estate,* 399 Pa. 314, 160 A. 2d 209 (1960), we held that an inter vivos trust which retains for the husband a special testamentary power of appointment is subject to Section 11, and there fully explored and explained the legislative purpose of Section 11: "The mischief to be remedied and the reason for the new law are clear. Wives are being unfairly deprived of a share in their husband's personal property by a *transparent trust device which permitted a husband to retain control of his property,* and at the same time legally deprive his wife of her just marital rights therein." Id. at 318-19, 160 A. 2d at 213 (emphasis added). In addition, we also observed: "It is clear that Section 11 was passed to prevent a husband, intentionally or otherwise, from defrauding his surviving wife of her marital rights by an inter vivos trust which contained a power of revocation or consumption or a power of general or special appointment by will. For centuries the law has sought to protect a wife and preserve for her some share in her husband's property—the ancient right of dower, and more recently intestate Acts and Wills Acts. Pennsylvania has been a laggard in this field. However, in the field of Wills, Trusts and Decedents' Estates, *a wife's rights have always been recognized as higher than rights of children,* or relatives or friends or charities or legatees." Id. at 321, 160 A. 2d at 214 (emphasis added); cf. *Montague Estate,* 403 Pa. 558, 560-61, 170 A. 2d 103, 105 (1961).

It is pertinent to note that the Tax Court of the United States has ruled on the very issue presented by

this appeal and has decided the same contrary to the majority. That Court has held that where the decedent-donor, in transferring property to a minor child under the Uniform Gift to Minors Act, names himself custodian and dies prior to the minor-donee's majority, the property constituting the gift is includible in the decedent's gross estate and accordingly subject to Federal Estate Tax. See, *Estate of Harry Prudowsky, deceased, etc. v. Commissioner*, 55 T.C. 890 (1971); *Dorothy Stuit v. Commissioner*, 54 T.C. 580 (1970); *Estate of Jack F. Chrysler v. Commissioner*, 44 T.C. 55 (1965).

In all three cases, the Tax Court has indicated that it is immaterial whether the power to expend the income or the principal for the support of the child-donee was actually ever exercised. The Tax Court reasoned that the decedent-donor, acting in the capacity of custodian, at all times, by the very terms of the Gift to Minors Act, retained the power to alter or amend the transaction by using either the gift property itself or the income derived therefrom to fulfill his legal obligation to support his child-donee. It is the retention of these powers to pay the income or principal of the gift to the donor-custodian's child in furtherance of the donor-custodian's support obligation, and to conceivably consume the gift in the process, that renders the gift incomplete, and subsequently taxable to the donor-custodian upon his death.

Moreover, for income tax purposes, the Internal Revenue Service has ruled that income derived from property transferred under the Uniform Gift to Minors Act and other similar statutes is taxable to the donor where the income is used in whole or in part to discharge his legal obligation to support the child-donee. Rev. Rul. 56-484, 1956-2 Cum. Bull. 23. See also Rev. Rul. 59-357, 1959-2 Cum. Bull. 212; Newman, Tax and Substantive Aspects of Gifts to Minors, 50 Cornell L.Q. 446 (1965).

It is ironic, indeed, that while the majority finds that the decedent lacked sufficient control over the gift property to bring it within the ambit of Section 11 of the Estates Act of 1947, the federal decisions noted above unquestionably mandate a finding of sufficient control to incorporate it into the decedent's estate for the purpose of computing the Federal Estate Tax due.

It is difficult to comprehend how the majority can ignore the effect of the conveyance and support obligation involved in this case. Under the majority's holding, Edward Schwartz, as donor-custodian with a support obligation to his minor son, was able to shield permanently from his wife in violation of the clear mandate of Section 11 property over which he simultaneously retained controls—namely the power to use the custodial assets in place of his personal assets to satisfy his parental support obligation without subjecting the property to the concomitant right of the widow to elect to take her one-half share. It was precisely this type of conveyance depriving the widow of her right to enjoy her testamentary share of her husband's property that Section 11 was designed to preclude.

I believe the decree of the orphans' court should be affirmed.

Mr. Justice O'BRIEN joins in this dissent.