# Adams Estate

*Frederick T. Bebbington,* for petitioner.
*Jeanne Clark Benjamin,* guardian ad litem, p.p.

SATTERTHWAITE, *P. J.,* November 12, 1975 —The question involved in these proceedings is whether a widow may recover her alleged statutory rights in lieu of dower out of real estate purchased by her deceased husband in his lifetime where he had placed, and for many years prior to his death had held, the title thereto in his own name as trustee for a grandson upon irrevocable trusts to continue during the latter's minority and then to be transferred to the grandson outright. The matter is before the court on the widow's petition, ostensibly as administratrix c.t.a. of the deceased husband's estate, seeking a decree "setting aside" the trust so that the real estate "shall be held as an asset" of the estate. The court quite properly and necessarily refused to grant forthwith the ex parte relief so requested, appointed a guardian ad litem for the minor grandson and held a hearing. The facts so developed were largely uncontradicted.

Decedent, Clifford W. Adams, and petitioner, Esther Adams, had been husband and wife for many years and, although separated and estranged since 1965, remained husband and wife until his death on June 6, 1974. He left a will, duly probated, whereby he directed his residuary estate to be equally divided among his wife and his two adult

children; letters of administration c.t.a. were granted to the widow.

On September 29, 1966, decedent, using his own funds in an undisclosed amount, and for a stated deed consideration of $11,000 involving a mortgage, purchased the subject real estate known as premises No. 235 Doone Road, Fairless Hills, this county, taking title in his own name as trustee for Carl Adams, his grandson. The terms of the trust were spelled out at length in the deed from the third-party seller of the premises, apparently at decedent's direction:

"Whereas, Clifford W. Adams declares and acknowledges that he holds the premises for the sole and exclusive use and benefit of CARL ADAMS, his minor grandson (hereinafter called Beneficiary); and further certifies and declares that he does not have, nor claim to have, any personal or beneficial interest of any kind or description in or to the premises or any part thereof.

". . .

"IN TRUST NEVERTHELESS for the following uses and purposes: THAT THE said Clifford W. Adams shall hold legal title to the within described premises, during the minority of Carl Adams and for his sole use and benefit and not otherwise; and THAT Carl Adams, the said Beneficiary, may use and occupy said property to his own benefit and enjoyment, and if such use and occupancy shall ever cease and terminate, then Clifford W. Adams, as trustee, shall have the power to collect any and all rents, income, profits and any other thing of value from said property, and to pay necessary expenses including but not limited to the mortgage obligation and payments, fire insurance, taxes which were created and accepted at the time of

purchase, and repairs, and to use and maintain the surplus for the said Beneficiary, PROVIDED that the interest of said Trustee shall cease and determine when the said Carl Adams, grandson of said Trustee, shall have reached the age of twenty-one years, at which time title to said property shall vest in the said Carl Adams free and clear of any trusts and all the surplus and remainder of rents, issues and profits from said property shall be transferred and delivered unto said Beneficiary.

"This trust is being established to create a home for said Trustee and Beneficiary, and the Trustee during the term of the trust shall have the power to sell, lease, mortgage and execute bonds, notes, obligations or other assurances in law and otherwise deal with the said property as he in his sole discretion deems best for the purposes for which this trust is created."

While decedent at no point attested or signed the deed as such trustee, he unquestionably did accept the grant in fact and thereafter personally occupied the premises until his death. He personally made the mortgage payments and other carrying charges attributable to the property in amounts which do not appear in the record. The grandson, Carl Adams, born October 12, 1965 and less than one year of age at the time of the acquisition of this property, resided in Bristol with his own parents (his father being decedent's son); the child never resided with decedent either before or after the purchase and, in fact, never did occupy the property.

The within petition was filed on June 11, 1975, a year after decedent's death. The mortgage on the premises was then in arrears and foreclosure was threatened. Pursuant to the order of this court on

July 9, 1975, The First National Bank and Trust Company of Newtown was appointed successor trustee under the aforesaid deed and was authorized to carry out a private sale of the premises, apparently negotiated by a real estate broker acting at the instance of petitioner, and to hold the net proceeds (apparently about $15,000) pending the outcome of these proceedings.

In 1966, petitioner, as wife of decedent, had instituted proceedings for her own support, resulting in an agreed order of $15 (later increased to $21.50) per week, which decedent apparently paid to the time of his death. Petitioner, as the surviving widow, has filed no election to take against either decedent's will (under section 2508 of the Decedents, Estates and Fiduciaries Code of June 30, 1972, P.L. 508 (No. 164), 20 Pa.C.S. §2508) or inter vivos transfers (under section 6111 of the code), and, of course, the one-year's time for such an election has now expired with no request for an extension.

Before proceeding to consideration of the merits of the within petition, the court believes mention should be made of two preliminary matters: (1) the jurisdiction of the Orphans' Court Division over the subject matter, and (2) the standing of petitioner as administratrix c.t.a. to initiate and carry on the litigation.

On the former question, it would seem that this division is empowered to act under section 711(3) of the DEF Code, supra, which confers exclusive jurisdiction upon the Orphans' Court Division in matters involving not only the administration and distribution of property of inter vivos trusts but also "the reformation or setting aside of any such trusts," unless jurisdiction thereof had already been acquired by another court prior to 1969.

Petitioner's status, as personal representative of decedent's estate, however, is more open to question, and the court believes that she has no standing as such on behalf of the estate generally. There can be no possible question but that decedent's creation of the within trust was valid and effective as to himself. One may undoubtedly create a valid trust by declaration so stating, even though naming himself as trustee: Dickerson's Appeal, 115 Pa. 198, 8 Atl. 64 (1887). Cf. Converse v. Hawse, 326 Pa. 1, 190 Atl. 899 (1937). Moreover, a married man may validly transfer his property, even his real estate, without the joinder of his wife, subject, of course, to the spouse's inchoate statutory rights if she survives; and, therefore, the personal representative of the deceased husband's estate is not an interested party and has no standing in proceedings such as the present where the real question is the surviving spouse's attempt to assert her personal rights, as such, in property which the husband had aliened in his lifetime: Hines Estate, 17 Bucks 484, 490, 491, 18 Fiduc. Rep. 74, 81, 83, 44 D. & C. 2d 401, 408, 409 (1968), and cases cited.

In the instant case, since the declaration of trust stands unimpeached as binding against decedent himself, there is no possible ground upon which the trust property could be recovered or regarded as a general asset of decedent's probate estate; the only even arguable controversy here is whether petitioner, *as widow*, is entitled to an interest in the trust property to be shared with the grandchild cestui que trust.

Rather than dismiss this petition for lack of standing of the administratrix c.t.a., however, and in view of the fact that the personal representative and the widow are one and the same person, the court will proceed to determine the matter as

though the petition had been filed by her in her individual capacity.

There were innuendos in the course of argument that petitioner might be entitled to set the whole transaction aside as a fraudulent conveyance in violation of her rights as a creditor in view of decedent's obligations to her under the support order. Regardless of all other considerations in this connection, however, this theory or cause of action has become moot and of no legal consequence for the rather elemental circumstance that it does not appear that the widow ever was, or even is now, an *unpaid* creditor to whom decedent owed any *unsatisfied* monetary obligation for support down to the very time of his death when, of course, his non-contractual liability for support terminated. See Wolfsohn v. Solms, 392 Pa. 129, 131, 139 A. 2d 523 (1958).

Moreover, the widow may not proceed herein on the theory that she is entitled to regard either the original creation of the trust with decedent's funds, or the subsequent payments by him for carrying charges and enhancements attributable to the trust property, as inter vivos conveyances which she might take against under section 6111 of the DEF Code. In the first place, she has not filed the requisite election and it is now too late to do so. Furthermore, it is clear that the within trust is not one involving a conveyance of assets where decedent, in so doing, had "retained a power of appointment by will, or a power of revocation or consumption over the principal thereof." Except, arguably, for the reserved right of occupancy, decedent held no personal powers under this irrevocable trust. Hence, it is not within the class of conveyances contemplated by section 6111. Compare Schwartz

Estate, 449 Pa. 112, 114-15, 295 A. 2d 600 (1972); Killion Trust, 30 D. & C. 2d 101, 104 (1963), in both of which the limited personal benefits reserved or accruing to the deceased settlor-transferor by operation of law, although not insignificant, were held not to be within the scope of section 11 of the Estates Act of April 24, 1947, P.L. 100, 20 P.S. §301.11, the prior statutory provision of which section 6111 of the DEF Code, supra, was the identical re-enactment. See, also, Brown Estate, 446 Pa. 401, 412, 289 A. 2d 77 (1972).

The only remaining theory upon which petitioner can possibly be successful herein, even individually as decedent's widow, is the common-law concept of conveyances of personalty by a husband in so-called "fraud" of her conjugal rights. Her statutory dower rights in any realty which he may have individually owned and in the disposition of which she did not join are patently inapplicable. This is not a case where he, being already the owner in his own right of real estate, attempted to divest himself of beneficial ownership thereof by creating a trust for another therein. Here, decedent never had been, nor did he become by the deed from the third-party seller by which the trust was created, the owner of the subject property. Rather, he was the mere legal conduit whereby he became the trustee, who, in legal theory, could just as well have been any other individual or qualified trust institution, to act as the bare holder of the title for the sole beneficial ownership of his grandson and with no reserved personal attributes of ownership, except, arguably, the limited right of occupancy hereinafter considered.

The relevant considerations pertinent to a determination of the widow's rights respecting transferred personalty were comprehensibly outlined in

Montague Estate, 403 Pa. 558, 560-61, 170 A. 2d 103 (1961):

"There is no doubt but that under the law of Pennsylvania, as well as the common law, a married man during his lifetime may dispose of his personal estate as he sees fit. He is the absolute owner thereof and his wife and children have no vested interest therein. Their right to his property attaches only at his death: Benkast v. Commonwealth Trust Co., 269 Pa. 257, 112 Atl. 62 (1920); Windolph v. Girard Trust Co., 245 Pa. 349, 91 Atl. 634 (1914). However, it is equally well established a married man cannot, without complete divestiture, dispose of his personal estate during his lifetime without his wife's consent with an intent to commit an actual fraud upon her rights: compare DeNoble v. DeNoble, 331 Pa. 273, 200 Atl. 77 (1938). In determining the question of intent, actual fraud is the indispensable foundation and it is not established merely by proving that the husband's purpose is to deprive the wife of her distributive share in his estate as widow. The 'good faith' of the donor does not refer to the purpose to affect his wife, but rather to the intent to divest himself of the ownership of the property: Lines v. Lines, 142 Pa. 149, 21 Atl. 809 (1891); Beirne v. Cont.-Equitable T. & Tr. Co., 307 Pa. 570, 161 Atl. 721 (1932). Hence, it has been held that if a married man makes a gift of personalty during his lifetime in such a manner that the transfer is a colorable one and under such circumstances that he retains a concealed interest, or control, over the property, such a gift is fraudulent and will be set aside: DeNoble v. DeNoble, supra; Cancilla v. Bondy, 353 Pa. 249, 44 A. 2d 586 (1945). To be valid the gift must be made in 'good faith' and with the intention

to divest himself of the ownership in the property: Windolph v. Girard Trust Co., supra."

Petitioner testified herein (no objection having been made by the guardian ad litem under the "Dead Man's Act") that decedent had made declarations in his lifetime to the effect that he put the title to the subject property in his grandson's name so that she could never get anything of his as his wife. Accepting this testimony as credible, and finding that the motivation or occasion for decedent's creation of the subject trust was to preclude petitioner from sharing in his property or estate, the court, nevertheless, believes that such motivation, standing alone, is insufficient to entitle petitioner to be successful in these proceedings.

It is not fraud per se as to a wife for a married man to place real estate in the name of a third party; it may or may not amount to fraud on her rights in fact, depending upon particular circumstances of each case: Asam v. Asam, 239 Pa. 295, 86 Atl. 871 (1913). Not even an express statement of intention to deprive the spouse of a share in the property so transferred is sufficient to render it fraudulent as to such spouse; "good faith" goes to the question of whether or not there was divestiture of ownership, not the purpose to deprive the spouse: Potter Title and Trust Co., Guardian v. Braum, 294 Pa. 482, 144 Atl. 401 (1928); Rynier's Estate, 347 Pa. 471, 32 A. 2d 736 (1943); Cancilla v. Bondy, 353 Pa. 249, 44 A. 2d 586 (1945); and see Schwartz Estate, supra, 449 Pa. at 114-15.

In the instant case, there cannot have been any "esoteric" or undisclosed understanding, as there was found to exist in Montague, supra, between decedent and any other person whereby his rights of personal ownership in ostensibly transferred

property had secretly been preserved. Here, decedent's declaration of trust was spread upon the public record of the recorded deed, and the parol evidence rule, if any question were ever raised about it, would have precluded any denial, contradiction or variance of the terms thereof. The fact that no occasion ever arose to have such rights as therein conferred upon the grandson construed or taken advantage of by him or on his behalf during decedent's lifetime is beside the point. He was the absolute, unequivocal and irrevocable beneficial owner of the subject property from the very date of the deed, and his ownership could not have been divested by decedent in any manner whatsoever.

The fact that decedent did personally occupy the premises throughout his continued lifetime is likewise beside the point. He correlatively paid or discharged the on-going expenses of maintaining the property, a practice not inconsistent with the grandson's ownership, and, in fact, carrying out the necessities of the situation that the same had to be preserved by someone for the grandson's eventual enjoyment, since the child had no occasion to resort thereto while his own father was still maintaining him. Even if decedent be regarded, in effect, as reserving a life interest in the premises to himself, such is not necessarily sufficient to permit the spouse to avoid the transaction. Compare Schwartz Estate, supra, 449 Pa. 112; Killion Trust, supra, 30 D. & C. 2d 101.

For the foregoing reasons, the within petition must be denied and refused, and the successor trustee is hereby directed to continue to hold the proceeds of the subject realty in trust for Carl Adams pursuant to the terms and directions of the original deed hereinabove recited.

## FINAL DECREE

And now, November 12, 1975, for the reasons stated in the foregoing opinion, the within petition to set aside the subject trust and hold the property in question to be an asset of decedent's estate is hereby denied, refused and dismissed; costs to be paid out of the proceeds held by the successor trustee. Such costs shall include compensation to Jeanne Clark Benjamin, Esq., guardian ad litem, in the amount of $250, which said successor trustee is hereby authorized and directed to pay.